# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4902-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.C.,

     Defendant-Appellant,

and

A.R.,

     Defendant.

_____

IN THE MATTER OF G.M.R.,

     a Minor.

_____

     Argued November 13, 2019 – Decided December 12, 2019

     Before Judges Fisher, Accurso and Gilson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County Docket No. FN-02-0251-17.

David Anthony Gies, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; David Anthony Gies, on the briefs).

Jason Wade Rockwell, Assistant Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Kenneth M. Cabot, Deputy Attorney General, on the brief).

Cory Hadley Cassar, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Cory Hadley Cassar, on the brief).

PER CURIAM

A mother appeals from an order finding that she abused or neglected her infant daughter by using unprescribed drugs while she was pregnant with the child. At birth, the child suffered from withdrawal symptoms and had to be treated in a hospital for several weeks. We affirm.

I.

J.C. (Joyce), the mother, and A.R., the father, are the parents of G.M.R. (Gen), who was born in March 2017.[1] At birth, a toxicology analysis showed

---

[1] We use initials and fictitious names to protect privacy interests and the confidentiality of the record. R. 1:38-3(d)(12).

that Gen had methadone, benzodiazepines, tetrahydrocannabinol (THC), and cocaine in her blood. The child was diagnosed with neonatal abstinence syndrome (NAS) and treated for withdrawal symptoms for several weeks in a neonatal intensive care unit at the hospital where she was born.

On April 21, 2017, after Gen was discharged from the hospital, the Division of Child Protection and Permanency (the Division) conducted an emergency removal and placed her in the care of a family member. Thereafter, the Division was granted custody of Gen, and Joyce was charged with child abuse or neglect. A.R., the father, was not charged and no findings of abuse or neglect were made against him.

A fact-finding hearing was conducted on July 24, 2017. The Division entered a number of exhibits into evidence and called two witnesses: Laurie Laverty, a Division caseworker, and Stephen Percy, M.D., a pediatrician who treated Gen after her birth. Joyce did not testify.

Documents submitted into evidence established that Joyce overdosed on heroin in November 2016, while pregnant with Gen. At that time, Joyce admitted that she was using heroin daily and crack cocaine twice a week. Accordingly, she was referred to a treatment program.

A-4902-17T1

Laverty testified that she met with Joyce at the hospital on the day of Gen's birth. Joyce admitted she had tested positive for use of methadone, benzodiazepines, cocaine, and marijuana. She claimed that she was prescribed methadone through the Monsignor Wall treatment program.

The court twice entered orders before the fact-finding hearing directing Joyce to sign and give a medical release to the Division. Moreover, Laverty testified that Joyce told her she had signed a release with Monsignor Wall granting the Division access to information pertaining to her treatment program. Joyce, however, never signed such a release. Accordingly, Laverty testified that the Division could not confirm that Joyce had been in a methadone treatment program and that the methadone was being administered with medical oversight.

Dr. Percy was qualified as an expert in pediatrics, including pediatric critical care. He testified that Gen was diagnosed with NAS and described her symptoms as including tremors, exaggerated moro reflex, and increased respiratory rate.

Dr. Percy also stated that Gen was treated for methadone withdrawal in both the intensive care unit and the general pediatric area for several weeks. He explained that an infant withdrawing from benzodiazepines would exhibit similar symptoms to an infant withdrawing from an opioid, such as methadone.

 A-4902-17T1

Dr. Percy stated that he could not offer an opinion as to whether Gen's withdrawal symptoms were caused by just methadone or benzodiazepines because there is "a fair amount of overlap" between the symptoms caused by each substance.

The family court announced its ruling on the record on October 18, 2017. On that same day it entered an order finding that Joyce had abused or neglected Gen. The court found the testimony of both Laverty and Dr. Percy credible. Based on that testimony, as well as the documents that had been entered into evidence, the court found that Gen's physical condition had been impaired because of Joyce's use of unprescribed drugs, including benzodiazepines, cocaine, marijuana, and methadone. In that regard, the court found that Gen had "[u]nquestionably . . . suffered actual harm."

In April 2018, the family court accepted the Division's permanency plan to terminate Joyce's parental rights so that Gen can be adopted. The Division, thereafter, filed a guardianship complaint, and the court terminated this Title 9 matter.

II.

Joyce now appeals from the October 18, 2017 order finding that she abused or neglected Gen. She makes a series of related and overlapping

arguments, contending (1) the Division did not prove that her prenatal use of drugs caused harm to Gen; (2) the court improperly shifted to her the burden to show that she participated in a methadone treatment program; and (3) the Division, through the testimony of Dr. Percy, failed to prove that any drugs other than methadone caused Gen to have withdrawal symptoms. We reject all of those arguments because the evidence at the fact-finding hearing refutes each of Joyce's contentions.

The scope of our review of an appeal from an order finding abuse or neglect is limited. N.J. Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing and quoting N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008)). We will uphold the trial judge's factual findings and credibility determinations if they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (first citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993); then citing Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)). Accordingly, we will only overturn the judge's findings if they "went so wide of the mark that the judge was clearly mistaken." Ibid. (citing J.T., 269 N.J. Super. at 188-89). We do not, however, give "special deference" to the trial court's interpretation of the law.

D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)). Consequently, we apply a de novo standard of review to legal issues. Id. at 245-46.

The adjudication of abuse or neglect is governed by Title 9, which is designed to protect children. N.J.S.A. 9:6-1 to -8.114. Under Title 9, a child is abused or neglected if:

> [a] parent or guardian . . . creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ . . . or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(2), (c)(4)(b).]

The protection of the abuse and neglect statute "is limited to the condition of a child after birth." N.J. Dept. of Children v. A.L., 213 N.J. 1, 22 (2013) (citing N.J. Div. of Youth and Family Servs. v. L.V., 382 N.J. Super. 582, 590 (Ch. Div. 2005)).

> Therefore, the primary question under Title 9 is whether [the child], as a newborn, "ha[s] been

> impaired" or was in "imminent danger of becoming impaired" as a result of his [or her] mother's failure to exercise a minimum degree of care by unreasonably inflicting harm or allowing a "substantial risk" of harm to be inflicted.
>
> [Ibid. (quoting N.J.S.A. 9:6-8.21(c)(4)(b)).]

"If an expectant mother's drug use causes actual harm to the physical, mental, or emotional condition of a newborn child, a finding of abuse or neglect is appropriate." Id. at 8.

Nevertheless, "not every instance of drug use by a parent during pregnancy, standing alone, will substantiate a finding of abuse and neglect in light of the specific language of the statute." Id. at 23; see also id. at 23 n.3 (noting that New Jersey has not joined those states whose laws treat prenatal drug use as per se child abuse); N.J. Div. of Youth & Family Servs. v. N.D., 435 N.J. Super. 488, 494 (App. Div. 2014) (same). Actual harm under the statute can be established by offering proof that a child suffered drug "withdrawal symptoms at birth" or by "showing evidence of respiratory distress, cardiovascular or central nervous system complications, low gestational age at birth, low birth weight, poor feeding patterns, weight loss through an extended hospital stay, lethargy, convulsions, or tremors." A.L., 213 N.J. at 22-23 (citing In re Guardianship of K.H.O., 161 N.J. 337, 349-50 (1999)). When, as here,

there is actual harm, proof of such harm "may come from any number of competent sources including medical and hospital records, health care providers, [or] caregivers, [as well as] qualified experts." Id. at 23.

Our Supreme Court has clarified that, under certain circumstances, proof of prenatal drug use coupled with the fact that a newborn suffered withdrawal symptoms may not be sufficient to establish abuse and neglect. See N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 168 (2014). Those circumstances require proof that the mother was (1) participating in a bona fide treatment program, (2) prescribed methadone by a licensed healthcare professional, (3) after full disclosure. Ibid. In that regard, the Court held,

> [A]bsent exceptional circumstances, a finding of abuse or neglect cannot be sustained based solely on a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program prescribed by a licensed healthcare professional to whom she has made full disclosure. In this case, a finding of abuse or neglect under N.J.S.A. 9:6-8.21(c)(4)(b) required proof that [the mother] unreasonably inflicted harm on her newborn and did so, at least, by acting with gross negligence or recklessness.
>
> [Id. at 168-69.]

Joyce's drug use during pregnancy actually harmed Gen. The child tested positive for methadone, benzodiazepines, cocaine, and THC, and was not born

healthy. Instead, Gen suffered from withdrawal symptoms that included tremors and respiratory problems. She was hospitalized for several weeks and treated in an intensive care unit.

Joyce contends that, pursuant to Y.N., the finding of abuse and neglect must be reversed. Joyce's reliance on Y.N. is misplaced for two reasons.

First, in Y.N., the sole drug identified as causing the newborn's withdrawal symptoms was methadone. Id. at 170. The Court accepted the mother's testimony that she was taking methadone as part of a treatment program she entered prior to giving birth. Id. at 169-70. Here, in contrast, there is no credible evidence in the record that Joyce was prescribed methadone in conjunction with a bona fide treatment program or that her use of methadone during her pregnancy was authorized by a qualified physician after full disclosure.

Second, Gen had additional substances in her system that caused her harm or threatened to cause her harm. In addition to methadone, at birth Gen also had benzodiazepines, cocaine, and THC in her blood. Dr. Percy testified that the withdrawal symptoms for methadone and benzodiazepines "overlapped" and therefore Gen's symptoms could have been caused by the benzodiazepines.

A-4902-17T1

Moreover, the evidence that Joyce used benzodiazepines, cocaine, and marijuana while pregnant exposed Gen to a substantial risk of harm.

In short, Joyce's first and third arguments are rebutted by the substantial credible evidence presented at the fact-finding hearing. The family judge found that evidence credible and reliable and based her findings on that evidence. We discern no grounds for disagreeing with the trial court's findings.

We also reject Joyce's argument that the family court improperly shifted a burden to her. There was no burden shifting. Instead, the Division presented strong evidence that Joyce used unprescribed drugs without prescriptions while pregnant with Gen, and those drugs caused actual harm to Gen. In response, Joyce attempted to argue that her use of at least one of the drugs – methadone – was prescribed by a bona fide treatment program. Joyce, however, did not present any evidence that she was in such a treatment program. Just as importantly, Joyce prevented the Division from contacting her treatment program to determine whether she had been properly prescribed methadone by a licensed healthcare professional after full disclosure.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4902-17T1